UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JAHKEEM MOYE, B.B., a minor by BUTCH
MURRAY, his grandfather, KEVIN BEAUBRUN,
and DESMOND DENT, JR.,

                            Plaintiffs,

  -against-

LONGWOOD CENTRAL SCHOOL DISTRICT,
SCOTT REESE, and EDWARD HEINRICHS,

                           Defendants.
------------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**

Civil Action
No. 21-4329 (GRB) (SIL)

**GARY R. BROWN, United States District Judge**:

       Presently before this Court is a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure by defendants Edward Heinrichs ("Heinrichs"), Scott Reese ("Reese"), and the Longwood Central School District ("the District") against plaintiffs Jahkeem Moye ("Moye"), Khevin Beaubrun ("Beaubrun"), Desmond Dent, Jr. ("Dent"), and Gy' Kye Murray ("Murray"). *See* Docket Entries ("DE") 78-1, 86-3, 87-24. Plaintiffs assert claims pursuant to: (i) 42 U.S.C. § 1983 ("§ 1983") against Heinrichs and Reese for a violation of the Fourteenth Amendment's Equal Protection Clause; (ii) 42 U.S.C. § 2000(d) ("Title VI") against Heinrichs and Reese; and (iii) New York Executive Law § 294(6) ("New York State Human Rights Law" or "NYSHRL") against Heinrichs, Reese, and the District. For the reasons stated herein, defendants' summary judgment motion is GRANTED in its entirety.

       ***Factual Background***

This case arises out of a racially insensitive slide show that a teacher showed to his high school class. Heinrichs was a science teacher at Longwood High School, DE 62-2 ¶ 9, where Reese was an assistant principal, *id.* ¶ 5-6. Beaubrun was a twelfth grade student at Longwood High School at the time of the incident, while Moye, Dent, and Murray were eleventh graders. *Id.* ¶ 3.

In the fall of 2019, and for much of his more than twenty-year tenure, Heinrichs taught a zoology course. *Id.* ¶ 9. Moye and Dent were in Heinrichs' zoology class, while Beaubrun and Murray were in the zoology course taught by Ian Dowd, another science teacher. *Id.* ¶ 18. Virtually every year, Heinrichs and Dowd took their classes on a field trip to the Bronx Zoo. DE 86-3 at 4. Following the trip, Heinrichs would create a slide show to present to his class, in which he would juxtapose photos he had taken of students with those of animals to "remind students of the lessons learned in class and to remind them of the fun they had in the class." *Id.* On at least 11 occasions prior to the trip at issue, Heinrichs had taken a photo of several students in a single file line mimicking monkeys' grooming behavior. *Id.* He would then caption the photo "Monkey do," which would follow a slide consisting of a photo of monkeys captioned "Monkey see." DE 86-7. Over the years, students of various races, ethnicities, and genders were featured in these photos. DE 86-3 at 4.

On November 20, 2019, Heinrichs and Dowd took their zoology classes on the Bronx Zoo field trip, which all plaintiffs attended. DE 62-2 ¶ 19. During the trip, Heinrichs took a photo of the plaintiffs, all of whom are Black, smiling "while touching the back of each other's heads in a line to illustrate altruistic behavior." DE 86-3 at 4. After the trip, Heinrichs prepared a slide show without assistance from any District employees, including Reese. DE 78-1 at 8. On

2

one slide, there is a photo of three monkeys captioned "Monkey see." DE 86-6 at 2. The next slide was captioned "Monkey do" and featured the photo of the four plaintiffs. *Id.* at 3.

Heinrichs and Dowd arranged to show the presentation during class on December 20, 2019, the last day before Winter Break. DE 78-1 at 8. When Dowd showed the photo captioned "Monkey do" to his class, Beaubrun took a video and sent it via Snapchat with the caption "Son had us like slaves on the trip" with a crying face emoji. DE 62-2 ¶ 31.

Scott Schuster, the principal, learned about the slide show's existence from a teaching assistant and tasked Reese with investigating the incident. *Id.* ¶ 51. Reese spoke with Dowd and Heinrichs, learned that Dowd had displayed the slide show during his class, and asked Heinrichs to delete the "Monkey do" slide before he could display it to his class. *Id.* ¶ 63. Heinrichs complied. *Id.*

Reese and Jamal Walcott, another assistant principal, arranged to meet with each plaintiff. *Id.* ¶ 71. They met with Beaubrun first, who apologized for posting the video and said the slavery reference was a joke. *Id.* ¶¶ 78-79. Reese assured Beaubrun that he would not be suspended for taking a video during class, but asked Beaubrun to delete the Snapchat post if it was meant as a joke, because students and teachers might find the slavery reference "upsetting." *Id.* ¶ 81. Beaubrun complied. *Id.* ¶ 82. During the conversation, Reese noted that the school had been dealing with students posting photos and videos taken in class on Snapchat and that administrators typically asked students to remove such posts. *Id.* ¶ 85. Reese and Walcott also met briefly with Dent. *Id.* ¶ 92-93. Walcott did most of the talking, assuring Dent he was not in trouble. *Id.* ¶ 94-95. Reese and Walcott also tried to meet with Moye and Murray, but neither was available. *Id.* ¶ 99. Following Winter Break, Schuster and Walcott met with the parents and guardians of Murray, Moye, and Dent, *id.* ¶¶ 112-21, during which Schuster said that while he

did not believe Heinrichs acted with the intent to discriminate against plaintiffs, his creation of the "Monkey do" slide was "inappropriate," *id.* ¶¶ 114.

On January 7, 2020, the District placed Heinrichs on administrative assignment; he remained out for the remainder of the school year. *Id.* ¶ 138. The District's general counsel investigated the matter. *Id.* ¶ 144. The District placed a Letter of Reprimand in Heinrichs' personnel file. *Id.* ¶ 145. Heinrichs agreed to complete a racial sensitivity course prior to returning to the classroom, which he did. *Id.* Reese was not involved in any negotiations or procedures surrounding disciplining Heinrichs. *Id.* ¶ 139.

In their complaint, plaintiffs allege that Heinrichs, Reese, and the District violated the Fourteenth Amendment's Equal Protection Clause, Title VI, and the New York State Human Rights Law. *See* DE 31. The Court dismissed the constitutional and Title VI claims against the District for failure "to allege a custom, policy or practice under the requisites of *Monell*." June 2, 2022 Electronic Order. At summary judgment, the following claims remain: (1) § 1983 claims against Heinrichs and Reese; (2) Title VI claims against Heinrichs and Reese; and (3) NYSHRL claims against Heinrichs, Reese, and the District.

### *Discussion*

#### *Standard of Review*

This motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 Fed. App'x. 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

#### *Section 1983 Claims*

4

"An individual may be held liable under § 1983 only if that individual is personally involved in the alleged deprivation." *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "To state a race-based claim under the Equal Protection Clause [of the Fourteenth Amendment], a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000). Discriminatory intent requires proof that "a discriminatory purpose has been a motivating factor" in the challenged action. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977).

Section 1983 also permits hostile educational environment claims based on race, which requires that the plaintiff demonstrate "not only that [he] subjectively perceived the environment to be hostile or abusive, but also that the environment was objectively hostile and abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and insult, … that is sufficiently severe or pervasive to alter the conditions of, in this case, the victim's educational environment." *Hayut v. SUNY*, 352 F.3d 733, 745 (2d Cir. 2003) (internal quotation marks omitted). In considering the hostility of an educational environment, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with" the plaintiff's academic performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Finding the harassment "pervasive" means that the challenged incidents are "more than episodic; they

5

must be sufficiently continuous and concerted." *Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 577 (2d Cir. 1989).

Here, plaintiffs fail to assert a valid Equal Protection Clause claim. As to Reese, it is undisputed that upon learning of the offensive slide, he and Walcott immediately directed Heinrichs and Dowd to remove it from the presentation, which they did. DE 78-1 at 17. The undisputed facts show that Reese merely asked Beaubrun to remove his Snapchat video of the offensive slide, citing concerns about students increasingly posting videos on social media while in class. *Id.*; DE 62-2 ¶ 85. There is no evidence that Reese's request was motivated by race or an attempt to cover up Heinrichs' conduct.

As to Heinrichs, on this motion, plaintiffs have offered no evidence of intentional race-based discrimination. As the record undisputably shows, Heinrichs prepared the "Monkey do" slide for years and featured students of various races and ethnicities, which belies any argument that he selected plaintiffs based upon their race. DE 86-7. Heinrichs testified in his deposition—and plaintiffs offer no contrary evidence—that the purpose of the slides was "to remind the students of a pleasant educational experience and a memory of the course." DE 86-5 at 11.

Similarly, because there is no question of fact that Heinrichs did not intend to discriminate, the race-based hostile educational harassment claim fails. Additionally, the creation of the slide reflects a single incident, rather than pervasive activity. *See R.S. v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 371 F. App'x 231, 233 (2d Cir. 2010) (holding that a "trio of offensive emails" was insufficient for plaintiff to demonstrate suffering pervasive harassment).

6

Accordingly, the Court grants summary judgment to defendants Reese and Heinrichs on the § 1983 claims.

*Title VI Claims*

Title VI prohibits programs that receive federal assistance, including public educational institutions, from discriminating on the basis of race. *See* 42 U.S.C. § 2000(d). A plaintiff must show that (1) "[the defendant's action] was discriminatory based on race, color, or national origin; (2) the discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for Defendants' actions." *Yang v. Eastman Sch. of Music*, 2022 WL 1040418, at *2 (2d Cir. Apr. 7, 2022) (citing *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001)).

Here, the Court has already dismissed plaintiffs' Title VI claims against the District. *See* June 2, 2022 Electronic Order. Thus, the only remaining Title VI claims are asserted against Reese and Heinrichs in their official capacities. DE 38. For the reasons discussed above, it is undisputed that neither Heinrichs nor Reese engaged in intentional race-based discrimination.

Because plaintiffs have not presented any evidence to create a dispute of fact as to the intentions of Reese and Heinrichs, the Court need not consider whether individuals sued in their official capacity can be liable under Title VI. *See TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 594 (S.D.N.Y. 2011) (describing disagreement among district courts within the Second Circuit on this question). However, the balance of authority suggests that "Title VI does not permit a claim against an individual in his official capacity." *D.C. by Conley v. Copiague Union Free Sch. Dist.*, No. 16-CV-4546 (SJF)(AYS), 2017 WL 3017189, *at 10 (E.D.N.Y. July 11, 2017); *see Russell v. Cnty. of Nassau*, 696 F. Supp. 2d 213, 238 (E.D.N.Y. 2010) ("Title VI claims cannot be asserted against an individual defendant because the individual is not the

recipient of federal funds."); *Folkes v. New York Coll. of Osteopathic Med. of New York Inst. of Tech.*, 214 F. Supp. 2d 273, 292 (E.D.N.Y. 2002) ("Title VI claims cannot be asserted against an individual defendant for the same reason that they cannot be asserted under Title IX—the individual is not a recipient of federal funding.").

Accordingly, the Court grants summary judgment to defendants Reese and Heinrichs on plaintiffs' Title VI claims.

*NYSHRL Claims*

The NYSHRL prohibits any "educational institution" from permitting "harassment of any student or applicant, by reason of his race." N.Y. Exec. Law § 296.4. "An employer cannot be held liable [under the NYSHRL] for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it." *Hoit v. Cap. Dist. Transp. Auth.*, 805 F.Appx 41, 45 (2d Cir. 2020). "[A] good-faith response to address misconduct precludes a conclusion that an employer has condoned misbehavior even if reasonable people could find that response insufficient." *Payne v. JetBlue Airways Corp.*, No. 20-CV-101 (NRM)(PK), 2024 WL 3360381, at *12 (E.D.N.Y. July 9, 2024).

While the NYSHRL allows for individual liability, an individual can only be held liable under the NYSHRL for aiding and abetting discrimination by the employer. *See Boonmalert v. City of New York*, 721 F. App'x 29, 34 (2d Cir. 2018) ("Since there is no underlying NYSHRL … violation, there was no aiding or abetting of acts forbidden by the NYSHRL …"); *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 115-16 (E.D.N.Y. 2011) ("[A] plaintiff cannot prevail against an individual on her state NYSHRL claims unless she can first establish the liability of her employer"); *Virola v. XO Commc'ns, Inc.*, No. 05-CV-5056 (JG)(RER), 2008

8

WL 1766601, at *20 (E.D.N.Y. Apr. 15, 2008) ("An individual may not be held liable merely for aiding and abetting his own discriminatory conduct, but only for assisting another party in violating the [NYSHRL].").

Here, the District is not liable, because it did not encourage, condone, or approve of the slide show. No high school administrators knew about the slide show until December 20, 2019. DE 62-2 ¶ 40. The principal, Schuster, tasked Reese and Walcott with investigating the matter. *Id.* ¶¶ 41-51. Reese directed Heinrichs and Dowd to remove the photo from the slide show, which they did. *Id.* ¶¶ 63-64. Reese and Walcott attempted to meet with each plaintiff, *id.* ¶¶ 66-70, and Walcott and Schuster met with the parents and guardians of Murray, Moye, and Dent, *id.* ¶¶ 112-21, with Schuster labeling the "Monkey do" slide as "inappropriate," *id.* ¶ 114. High school administrators escalated the matter to the District's central administrative office after Winter Break; on January 7, 2020, the District removed Heinrichs from the classroom, and placed him on administrative assignment; Heinrichs remained out for the remainder of the school year. *Id.* ¶¶ 137-38. The District's general counsel conducted an investigation of the matter. *Id.* ¶ 144. The District required that for Heinrichs to be reinstated, he would need to undergo a racial sensitivity course at his own cost, which he completed. *Id.* ¶ 145. The District also placed a Letter of Reprimand in Heinrichs' personnel file. *Id.* Taken together, these facts indicate that the District engaged in good-faith efforts to address the fallout from Heinrichs' conduct.

Because the District did not violate the NYSHRL, plaintiffs cannot maintain an aiding and abetting claim against Reese and Heinrichs.

Accordingly, the Court grants summary judgment for all defendants on plaintiffs' NYSHRL claim.

*Conclusion*

For the reasons set forth herein, the Court grants defendants' motion for summary judgment in its entirety.

**SO ORDERED.**

Dated: Central Islip, New York
September 4, 2025

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge
